In The United States District Court
For The District Of Delaware

Manuel Nieves, Petitioner,

v.

Thomas Carroll, Warden,
and Carl C. Danbery, Attorney
General for the State of Delaware,
Respondent.

Civ. Act. No. 06-320-GMS



FILED

MAR 1 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD scanned

<u>Petitioner's Reply</u>

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions
28 U.S.C. foll. §2254, petitioner states the following reply to the
respondents answer for denial of relief for writ of habeas corpus.

In live of the statement of facts already briefed by the record,
the are not rehashed for the sake of judicial economy.

<u>Discussion</u>

The petitioner raised in his federal habeas petition for relief
the following claims: (1) Abuse of the state supreme court's denial of
consideration for trial counsel's ineffective assistance of counsel; (2)
violation of the Confrontation Clause for using a videotape statement
of the victim; and (3) prosecutorial misconduct under <u>Brady</u> for fail-
ing to inform the defense in a timely manner of the use of the video-
tape violating the petitioner's due process.

<u>Governing Legal Principles</u>

A.  Under AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States." Generally, AEDPA "modified a federal habeas court's role in reviewing a state prisoner application in order to prevent federal court's retrials and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

B.  Absent exceptional circumstances, a federal court cannot grant a federal habeas relief unless the petitioner has exhausted all means of available relief under state law. Thus, is the present case. See 28 U.S.C. §2254(b); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842-44, 119 S.Ct. 1728, 144 L.Ed. 2d 1 (1999); <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). This procedure requirement is meant to require the petitioner, to give "state court's one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. at 844-45; <u>Weets v. Vaughn</u>, 228 F.3d 178, 192 (3d Cir. 2000).

C.  To establish exhaustment, a petitioner <u>must</u> demonstrate that the habeas claim was "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. <u>Lambert v. Blackwell</u>, 134 F.3d 506, 513 (3d Cir. 1997) (citations omitted); <u>Coverdale v. Snyder</u>, 2000 WL 1897290 at *2 (D.Del. Dec 22, 2000). However, claims under merit for procedurally default are categorized differently and are available for consideration by a federal court under "cause and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will exist if the court does not review the claims.

2.

Coleman v. Thompson, 501 U.S. 722, 750-51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Mc Candless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). Compare with Barefoot, supra, at 893, n. *4; under 28 U.S.C. §2253 requiring an overview of the claims in the habeas petition and a general assessment of their merits. It does not require full consideration of the factual or legal basis adduced in support of the claims. But that he has been denied a Constitutional Right. Basi v. Angelone, 307 F.3d 487 (C.A.4 2000); Wheat v. Johnson, 238 F.3d 357 (C.A. 2 2000).

D. The state court's adjudication of the petitioners claims are:

1. A result of decisions that are contrary to, or involved in a unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; and

2. A result in a decision(s) that were based on unreasonable determinations of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. The petitioner's case demonstrates actual prejudice that, "not merely that the errors at trial and before created possibilities of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions". Murray v. Carrier, 477 U.S. at 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Failure to review the petitioner claims will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001).

## GROUND ONE

Trial Counsel Was Ineffective In The Pre-trial Stage

Our system of justice is meant to ensure fairness in the adversarial criminal process. United States v. Morrison, 449 U.S. 361, 101 S.Ct. 665 (1981). This means that a defendant is entitled to effective assistance of counsel, Kimmelman v. Morrison, ___ U.S. ___, 106 S.Ct. 2574, 2484 (1986), McMann v. Richardson, 397 U.S. 759, 771 n.*14, 90 S.Ct. 1441, 1449 n.14 (1970). Thus, the type of representation a defendant is given is crucial to his Sixth Amendment Right. The standard for judging ineffective assistance of counsel's conduct, is an objective standard of reasonableness." Younger v. State, Del. Sup., 580 A.2d 552, 556 (1990) (citing) Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). And in reviewing such claim(s), a reviewing court must look at the totality of the circumstances. Strickland, supra; Renai v. State, Del. Supr., 450 A.2d 382, 384 (1982), a pre-Strickland case. Compare to Albury v. State, Del. Supr., 551 A.2d 53 (1988).

In the present case counsel did not effect reasonable investigation of the state's case, in order to prepare for trial including:

1. Failing to meet with the defendant in order to effect preparation. Counsel only came to see the petitioner once at his place of incarceration, while waiting to go to trial and refused to responde to all letters of inquiry;

2. By doing so, counsel failed to properly review his client the applicable principles of law regarding him;

3. Refused to call specific witness for trial who would had been helpful for his defense, for file motion for dismissal of evidence;

4. Refused to raise any meritous issues on direct appeal.

4.

Ground Two

Prosecutor Committed Misconduct By Submitting A Videotape
Of The Victim Violating The Confrontation Clause.

Under Delaware's Confrontation Clause, a violation may accure
under two broad categories: cases involving the admission of out-of-court
statements and cases involving restejctions imposed by law or by the
teial judge allowance on the scope of cross-examation. The first reflects
the recognition that the "literal right to confront" the witness at the
time of teial, that forms the core of the values furthered by the Confront-
ation Clause. California v. Green, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.
2d 489 (1970). The second category of cases is exemplified by Davis v. Alaska,
415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974), in which although
some cross-examination of a prosecution witness was allowed, the
teial court did not permit defense counsel to "expose to the jury the
facts from which jurops, as the sole ties of fact and credibility could
appropriately draw references relating to the reliability of the witness.
Controntation means more than being able to confront the witnesses
physically. Davis, supra, at 315, 94 S.Ct., at 1110.

Delaware has recognized that the Confrontation Clause, do arise because
such restrictions may effectively emasculate the right of cross-examina-
tion itself. Smith v. Illinois, 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed. 2d 956
(1968). Under the second category "the cross-examiner is permitted to
delve into the witness story to test the witness perceptions and
memory, but is also allowed to impeach, i.e., direct, the witness. Davis
415 U.S., at 316, 94 S.Ct., at 1110. This case out-lines the problems of
both categories inferences under D.R.E. 404 (b). A precondition of
admission of Rule 404(b) evidence is that the teial judge must find that:

5.

(i) the evidence is material to an issue or ultimate fact in dispute in the case; (ii) it is being introduced for a purpose permitted by the Rule; (iii) the prior bad acts are subject to proof by clear and conclusive evidence; (iv) the prior acts are not "too remote in time from the charged offense; and (v) the probative value of the charged offense is not outweighed by the introduction of the prior bad acts. Here, the prosecution failed at all five preconditions. At trial the prosecution entered as direct evidence of the defendant's guilt, a video-tape confiscated from his home which was allegedly proof of his engagement of child molestation."

The defense offered as proof that no such acts had accured his own testimony and a print-out-copy of his cable bill for the alleged times of the accusations. See attached copy thereof marked exhibit (A). Noting that it gives no listings of such programing. The trial record and the Delaware Supreme Court noted that the victims testimony in-court was very inconsistent with her out-of-court statement. As such, and without more the prosecution introduction of both the video-tape and child victims testimony was no more than Hearsay. Keys v. State, 337 A.2d at 23 (1975). The state did not have a strong case, and its reliance on a conviction was merely based soley on these two factors. Without more, the state committed a plain error that was not only clear. But jeopardize the fairness and integrity of the trial process. Wainwright v. State, 504 A.2d 1096,1100 (1986);

1. The victim his eight year old god-daughter had alleged that the petitioner Manuel Nieves, had her watch pornographic video's. The state elicited this tape to show the petitioner's prior bad act. However, it was discovered at trial through testimony of his son, that the tape was his and taken out of belongings. There was no other physical evidence offered by the state of his charged offenses.

Darden v. Wainwright, 477 U.S. 168, 183, 91 L.Ed. 2d 144, 106 S.Ct. 2464 (1986);
Ramseur v. Beyer, 983 F.2d 1215, 1239 (3d Cir. 1992) (en banc). "The more
important the witness to the government's case, the more import-
ant the defendant's right, derived from the Confrontation Clause of the
Sixth Amendment". United States v. Foster, 300 U.S. App. D.C. 78, 986 F.2d
541, 543 (D.C. Cir. 1993); "The Confrontation Clause consideration are especi-
ally cogent when the testimony of a witness is critical to the prosecution's
case against a defendant." United States v. Lynch, 163 U.S. App. D.C. b, 499
F.2d 1011, 1022 (D.C. Cir. 1974), United States v. A & S Council Oil Co., 947 F.2d 1128,
1133 (4th Cir. 1991); United States v. Quinn, 901 F.2d 522, 529 (6th Cir. 1990).

The latter part of the petitioner's argument is that the prosecution
committed misconduct under Brady, for failing to inform the defense,
in violation of timely due process. In this instant case, the prosecution
did not disclose to the defense prior to trial the nature or context
of the victims testimony. The prosecutor has an affirmative duty to dis-
close such evidence and duty to "learn of any favorable evidence known
to the others acting on the government's behalf in a case, Kyles v.
Whitley, 514 U.S. 419, 432, 437, 115 S.Ct. 1555, 131 L.Ed. 2d 490 (1995). The
state's failure to inform of its witness testimony as directly its
point and chief undermined the defense, in violation of due process
under Brady. Bagley, 473 U.S. at 683, 105 S.Ct. 3375.

For any and all of the forementioned grounds, this court
should reverse and vacate the petitioner's conviction.

Dated: February 28, 2007

* Manuel Nieves
MANUEL NIEVES #464723

7.

**Ledger Details w/Totals**

File   Edit   Help

Account Number     250121-02  Name   MANUEL NIEVES

Last Statement Date     1/11/02  Amount          275.16  Statement          1

| From | To | Description | Amount | Total |
|------|-----|-------------|--------|-------|
| 5/11/00 | | STATEMENT BALANCE | 110.08 | 110.08 |
| 6/10/00 | | LATE FEE | 2.08 | 112.08 |
| 6/12/00 | 7/11/00 | ALL MONTHLY SERVICES | 23.40 | 135.48 |
| 6/12/00 | 7/11/00 | STANDARD | 24.40 | 159.88 |
| 6/12/00 | 7/11/00 | CONVERTER RENTAL | 2.50 | 162.38 |
| 6/12/00 | 7/11/00 | REMOTE CONTROL | .10 | 162.48 |
| 6/12/00 | 7/11/00 | FCC REGULATORY FEE | .04 | 162.52 |
| 6/12/00 | 7/11/00 | UTILITY TAX | 1.07 | 163.59 |
| 6/12/00 | 7/11/00 | FRANCHISE FEE | 2.53 | 166.12 |
| 6/11/00 | | STATEMENT BALANCE | 166.12 | 166.12 |
| 7/07/00 | | CHECK          BCH#-07558 | 110.08- | 56.04 |
| 7/10/00 | | LATE FEE | 2.00 | 58.04 |
| 7/12/00 | 6/11/00 | ALL MONTHLY SERVICES | 23.40 | 81.44 |

Ex.A.

02/28/2002 09:59 FAX 215 981 8508    COMCAST CABLE LEGAL DEPT    @004
02/28/2002 06:28 FAX 06 2 w60 320 GMS    DOCUMENT 242BE    Filed 03/01/2007    Page 9 of 37    @002



2/28/02

Field disco completed - 1/21/02

original install date not available, but
it was prior to the 4/10/97 conversion
to Convergys.

02/28/2002 10:02 FAX 215 981 0508 MS    COMCAST CABLE LEGAL DEPT    006
02/27/2002 18:55 FAX 502 661 8121    COMCAST CABLE    003
Case 1:05-cv-00320-JMS    Document 23    Filed 03/01/2007    Page 10 of 37

**Ledger Details w/totals**

File   Edit   Help

Account Number    256121-92   Name   MANUEL NIEVES

Last Statement Date    1/11/02   Amount    275.15   Statement    1

| From | To | Description | Amount | Total |
|------|------|------|------|------|
| 7/12/00 | 8/11/00 | STANDARD | 24.40 | 105.84 |
| 7/12/00 | 8/11/00 | CONVERTER RENTAL | 2.50 | 108.34 |
| 7/12/00 | 8/11/00 | REMOTE CONTROL | .10 | 108.44 |
| 7/12/00 | 8/11/00 | FCC REGULATORY FEE | .04 | 108.48 |
| 7/12/00 | 8/11/00 | UTILITY TAX | 1.07 | 109.55 |
| 7/12/00 | 8/11/00 | FRANCHISE FEE | 2.53 | 112.08 |
| 7/11/00 | | STATEMENT BALANCE | 112.08 | 112.08 |
| 8/18/00 | | LATE FEE | 2.00 | 114.08 |
| 8/12/00 | 9/11/00 | ALL MONTHLY SERVICES | 23.40 | 137.48 |
| 8/12/00 | 9/11/00 | STANDARD | 24.40 | 161.88 |
| 8/12/00 | 9/11/00 | CONVERTER RENTAL | 2.50 | 164.38 |
| 8/12/00 | 9/11/00 | REMOTE CONTROL | .10 | 164.48 |
| 8/12/00 | 9/11/00 | FCC REGULATORY FEE | .04 | 164.52 |



**Ledger Details w Totals**

File  Edit  Help

Account Number    258121-82  Name  MANUEL NIEVES
Last Statement Date    1/11/82  Amount    275.16  Statement    1

| From | To | Description | Amount | Total |
|---|---|---|---|---|
| 8/12/88 | 9/11/88 | UTILITY TAX | 1.07 | 165.59 |
| 8/12/88 | 9/11/88 | FRANCHISE FEE | 2.53 | 168.12 |
| 8/11/88 | | STATEMENT BALANCE | 168.12 | 168.12 |
| 9/05/88 | | CHECK        BCH#-87388 | 178.88- | 1.88- |
| 9/82/88 | 9/85/88 | BASIC | 1.83- | 3.71- |
| 9/82/88 | 9/85/88 | BASIC | 1.29- | 5.80- |
| 9/82/88 | 9/85/88 | STANDARD | 3.26- | 8.25- |
| 9/82/88 | 9/85/88 | FCC REGULATORY FEE | .01- | 8.26- |
| 9/82/88 | 9/85/88 | CONVERTER RENTAL | .33- | 8.59- |
| 9/82/88 | 9/85/88 | REMOTE CONTROL | .01- | 8.60- |
| 9/82/88 | 9/85/88 | UTILITY TAX | .14- | 8.74- |
| 9/82/88 | 9/85/88 | FRANCHISE FEE | .34- | 9.08- |
| 9/85/88 | | TRANSACTION FEE | 1.99 | 7.89- |

Ledger Details w/Totals

File   Edit   Help

Account Number     258121-02  Name   MANUEL NIEVES

Last Statement Date     1/11/02  Amount     275.16  Statement     1

| From | To | Description | Amount | Total |
|------|-----|-------------|--------|-------|
| 9/05/00 | | FRANCHISE FEE | .18 | 6.99- |
| 9/12/00 | 10/11/00 | ALL MONTHLY SERVICES | 23.40 | 16.41 |
| 9/12/00 | 10/11/00 | STANDARD | 24.40 | 40.81 |
| 9/12/00 | 10/11/00 | CONVERTER RENTAL | 2.50 | 43.31 |
| 9/12/00 | 10/11/00 | RENOTE CONTROL | .10 | 43.41 |
| 9/12/00 | 10/11/00 | FCC REGULATORY FEE | .04 | 43.45 |
| 9/12/00 | 10/11/00 | UTILITY TAX | 1.07 | 44.52 |
| 9/12/00 | 10/11/00 | FRANCHISE FEE | 2.53 | 47.05 |
| 9/18/00 | | STATEMENT BALANCE | 47.05 | 47.05 |
| 9/30/00 | | FCC REGULATORY FEE | .01- | 47.04 |
| 10/10/00 | | LATE FEE | 2.00 | 49.04 |
| 10/12/00 | 11/11/00 | ALL MONTHLY SERVICES | 23.40 | 72.44 |
| 10/12/00 | 11/11/00 | STANDARD | 24.40 | 96.84 |

## Ledger Details w/ Totals

File   Edit   Help

| Account Number | 250121-82 Name | MANUEL NIEVES |
|---|---|---|
| Last Statement Date | 1/11/02 Amount | 275.16 Statement | 1 |

| From | To | Description | Amount | Total |
|---|---|---|---|---|
| 10/12/00 | 11/11/00 | CONVERTER RENTAL | 2.50 | 99.34 |
| 10/12/00 | 11/11/00 | REMOTE CONTROL | .10 | 99.44 |
| 10/12/00 | 11/11/00 | FCC REGULATORY FEE | .04 | 99.48 |
| 10/12/00 | 11/11/00 | UTILITY TAX | 1.07 | 100.55 |
| 10/12/00 | 11/11/00 | FRANCHISE FEE | 2.53 | 103.08 |
| 10/11/00 | | STATEMENT BALANCE | 103.06 | 103.06 |
| 11/10/00 | | LATE FEE | 2.00 | 105.06 |
| 11/12/00 | 12/11/00 | ALL MONTHLY SERVICES | 47.80 | 152.88 |
| 11/12/00 | 12/11/00 | CONVERTER RENTAL | 2.50 | 155.38 |
| 11/12/00 | 12/11/00 | REMOTE CONTROL | .10 | 155.48 |
| 11/12/00 | 12/11/00 | FCC REGULATORY FEE | .04 | 155.52 |
| 11/12/00 | 12/11/00 | UTILITY TAX | 1.07 | 156.59 |
| 11/12/00 | 12/11/00 | FRANCHISE FEE | 2.53 | 159.12 |

Ledger Details w/Totals

File  Edit  Help

Account Number     250121-02 Name    MANUEL NIEVES

Last Statement Date    1/11/02 Amount    275.16 Statement    1

| From | To | Description | Amount | Total |
|------|-----|-------------|--------|-------|
| 11/11/00 | | STATEMENT BALANCE | 159.12 | 159.12 |
| 11/25/00 | | CHECK          BCK#-00404 | 159.12- | .00 |
| 12/12/00 | 1/11/01 | ALL MONTHLY SERVICES | 47.80 | 47.80 |
| 12/12/00 | 1/11/01 | CONVERTER RENTAL | 2.50 | 50.30 |
| 12/12/00 | 1/11/01 | REMOTE CONTROL | .10 | 50.40 |
| 12/12/00 | 1/11/01 | FCC REGULATORY FEE | .04 | 50.44 |
| 12/12/00 | 1/11/01 | UTILITY TAX | 1.07 | 51.51 |
| 12/12/00 | 1/11/01 | FRANCHISE FEE | 2.53 | 54.04 |
| 12/10/00 | | STATEMENT BALANCE | 54.04 | 54.04 |
| 1/10/01 | | LATE FEE | 2.00 | 56.04 |
| 1/12/01 | 2/11/01 | ALL MONTHLY SERVICES | 47.80 | 103.84 |
| 1/12/01 | 2/11/01 | CONVERTER RENTAL | 2.50 | 106.34 |
| 1/12/01 | 2/11/01 | REMOTE CONTROL | .10 | 106.44 |

**Ledger Details w/Totals**

File  Edit  Help

Account Number     250121-82  Name   MANUEL NIEVES

Last Statement Date     1/11/02  Amount     275.16  Statement    1

| From | To | Description | Amount | Total |
|------|------|-------------|--------|-------|
| 1/12/01 | 2/11/01 | FCC REGULATORY FEE | .04 | 106.48 |
| 1/12/01 | 2/11/01 | UTILITY TAX | 1.07 | 107.55 |
| 1/12/01 | 2/11/01 | FRANCHISE FEE | 2.53 | 110.08 |
| 1/11/01 | | STATEMENT BALANCE | 110.08 | 110.08 |
| 2/10/01 | | LATE FEE | 2.00 | 112.08 |
| 2/12/01 | 3/11/01 | ALL MONTHLY SERVICES | 47.80 | 159.88 |
| 2/12/01 | 3/11/01 | CONVERTER RENTAL | 2.50 | 162.38 |
| 2/12/01 | 3/11/01 | REMOTE CONTROL | .10 | 162.48 |
| 2/12/01 | 3/11/01 | FCC REGULATORY FEE | .04 | 162.52 |
| 2/12/01 | 3/11/01 | UTILITY TAX | 1.07 | 163.59 |
| 2/12/01 | 3/11/01 | FRANCHISE FEE | 2.53 | 166.12 |
| 2/10/01 | | STATEMENT BALANCE | 166.12 | 166.12 |
| 3/10/01 | | TRANSACTION FEE | 1.99 | 168.11 |



Ledger Details w/Totals

File  Edit  Help

Account Number     258121-82  Name    MANUEL NIEVES

Last Statement Date     1/11/82  Amount          275.15  Statement        1

| From | To | Description | Amount | Total |
|---|---|---|---|---|
| 3/18/81 | | FRANCHISE FEE | .11 | 168.22 |
| 3/18/81 | | LATE FEE | 2.08 | 170.22 |
| 3/10/81 | | TAXES-LATE FEE | .11 | 178.33 |
| 3/12/81 | 4/11/81 | ALL MONTHLY SERVICES | 51.45 | 221.78 |
| 3/12/81 | 4/11/81 | CONVERTER RENTAL | 2.50 | 224.28 |
| 3/12/81 | 4/11/81 | REMOTE CONTROL | .10 | 224.38 |
| 3/12/81 | 4/11/81 | FCC REGULATORY FEE | .04 | 224.42 |
| 3/12/81 | 4/11/81 | UTILITY TAX | 1.15 | 225.57 |
| 3/12/81 | 4/11/81 | FRANCHISE FEE | 2.91 | 228.48 |
| 3/18/81 | | STATEMENT BALANCE | 228.48 | 228.48 |
| 3/18/81 | 3/11/81 | STANDARD | 1.67- | 226.61 |
| 3/18/81 | 3/11/81 | HOME BOX OFFICE | .91- | 225.78 |
| 3/10/81 | 3/11/81 | BASIC | .65- | 225.85 |

**Ledger Details w/ Totals**

File   Edit   Help

Account Number     250121-02  Name   MANUEL NIEVES

Last Statement Date     1/11/02  Amount     275.16  Statement     1

| From | To | Description | Amount | Total |
|---|---|---|---|---|
| 3/10/01 | 3/11/01 | CONVERTER RENTAL | .17- | 224.88 |
| 3/10/01 | 3/11/01 | REMOTE CONTROL | .01- | 224.87 |
| 3/10/01 | 3/11/01 | UTILITY TAX | .08- | 224.79 |
| 3/10/01 | 3/11/01 | FRANCHISE FEE | .19- | 224.68 |
| 3/12/01 | 4/11/01 | STANDARD | 28.05- | 196.55 |
| 3/12/01 | 4/11/01 | HOME BOX OFFICE | 13.70- | 162.85 |
| 3/12/01 | 4/11/01 | BASIC | 9.70- | 173.15 |
| 3/12/01 | 4/11/01 | FCC REGULATORY FEE | .04- | 173.11 |
| 3/12/01 | 4/11/01 | CONVERTER RENTAL | 2.50- | 170.61 |
| 3/12/01 | 4/11/01 | REMOTE CONTROL | .10- | 170.51 |
| 3/12/01 | 4/11/01 | UTILITY TAX | 1.15- | 169.36 |
| 3/12/01 | 4/11/01 | FRANCHISE FEE | 2.91- | 166.45 |
| 3/16/01 | | STATEMENT BALANCE | 166.45 | 166.45 |

Ledger Details w/ Totals

File  Edit  Help

Account Number      250121-02  Name   MANUEL NIEVES

Last Statement Date      1/11/02  Amount      275.16  Statement      1

| From | To | Description | Amount | Total |
|------|------|-------------|--------|-------|
| 3/16/01 |  | UNRETURNED EQUIPMENT | 150.00 | 316.45 |
| 3/23/01 |  | CASH          BCH#-05991 | 184.00- | 132.45 |
| 3/24/01 |  | UNRETURNED EQUIPMENT | 150.00- | 17.55- |
| 3/24/01 |  | RECONNECTION | 18.00 | .45 |
| 3/24/01 |  | UTILITY TAX | .38 | .83 |
| 3/24/01 |  | FRANCHISE FEE | .96 | 1.79 |
| 3/24/01 | 4/11/01 | STANDARD | 16.83 | 18.62 |
| 3/24/01 | 4/11/01 | HOME BOX OFFICE | 8.22 | 26.84 |
| 3/24/01 | 4/11/01 | BASIC | 5.82 | 32.66 |
| 3/24/01 | 4/11/01 | FCC REGULATORY FEE | .02 | 32.68 |
| 3/24/01 | 4/11/01 | CONVERTER RENTAL | 1.50 | 34.18 |
| 3/24/01 | 4/11/01 | REMOTE CONTROL | .06 | 34.24 |
| 3/24/01 | 4/11/01 | UTILITY TAX | .69 | 34.93 |

**Ledger Details w/Totals**

File  Edit  Help

Account Number     250121-02  Name   MANUEL NIEVES

Last Statement Date     1/11/02  Amount     275.16  Statement     1

| From | To | Description | Amount | Total |
|------|------|-------------|--------|-------|
| 3/24/01 | 4/11/01 | FRANCHISE FEE | 1.75 | 36.60 |
| 3/25/01 | | STATEMENT BALANCE | 36.60 | 36.60 |
| 3/27/01 | 4/11/01 | HOME BOX OFFICE | 2.35- | 34.33 |
| 3/27/01 | 4/11/01 | CONVERTER RENTAL | 1.25- | 33.08 |
| 3/27/01 | 4/11/01 | REMOTE CONTROL | .05- | 33.03 |
| 3/27/01 | 4/11/01 | UTILITY TAX | .07- | 32.96 |
| 3/27/01 | 4/11/01 | FRANCHISE FEE | .20- | 32.76 |
| 4/10/01 | | LATE FEE | 2.00 | 34.76 |
| 4/10/01 | | TAXES-LATE FEE | .11 | 34.87 |
| 4/12/01 | 5/11/01 | ALL MONTHLY SERVICES | 61.70 | 96.57 |
| 4/12/01 | 5/11/01 | FCC REGULATORY FEE | .04 | 96.61 |
| 4/12/01 | 5/11/01 | UTILITY TAX | 1.31 | 97.92 |
| 4/12/01 | 5/11/01 | FRANCHISE FEE | 3.32 | 101.24 |

**Ledger Details w/Totals**

File   Edit   Help

Account Number     250121-02  Name   MANUEL NIEVES

Last Statement Date     1/11/02  Amount        275.16  Statement        1

| From | To | Description | | Amount | Total |
|------|-----|-------------|---|--------|-------|
| 4/11/01 | | STATEMENT BALANCE | | 101.24 | 101.24 |
| 5/10/01 | | LATE FEE | | 2.00 | 103.24 |
| 5/10/01 | | TAXES-LATE FEE | | .11 | 103.35 |
| 5/12/01 | 6/11/01 | ALL MONTHLY SERVICES | | 61.70 | 165.05 |
| 5/12/01 | 6/11/01 | FCC REGULATORY FEE | | .04 | 165.09 |
| 5/12/01 | 6/11/01 | UTILITY TAX | | 1.31 | 166.40 |
| 5/12/01 | 6/11/01 | FRANCHISE FEE | | 3.31 | 169.71 |
| 5/11/01 | | STATEMENT BALANCE | | 169.71 | 169.71 |
| 5/29/01 | | CHECK | BCH#-02077 | 15.00- | 154.71 |
| 5/29/01 | | CASH | BCH#-02077 | 20.00- | 134.71 |
| 6/02/01 | | CHECK | BCH#-04039 | 66.24- | 68.47 |
| 6/10/01 | | LATE FEE | | 2.00 | 70.47 |
| 6/10/01 | | TAXES-LATE FEE | | .11 | 70.58 |

Ledger Details w/ Totals

File   Edit   Help

Account Number    250121-02   Name   MANUEL NIEVES

Last Statement Date    1/11/02   Amount    275.16   Statement    1

| From | To | Description | Amount | Total |
|------|------|------------|--------|-------|
| 6/12/01 | 7/11/01 | ALL MONTHLY SERVICES | 61.70 | 132.28 |
| 6/12/01 | 7/11/01 | FCC REGULATORY FEE | .04 | 132.32 |
| 6/12/01 | 7/11/01 | UTILITY TAX | 1.31 | 133.63 |
| 6/12/01 | 7/11/01 | FRANCHISE FEE | 3.31 | 136.94 |
| 6/10/01 | | STATEMENT BALANCE | 136.94 | 136.94 |
| 7/11/01 | | LATE FEE | 2.90 | 138.94 |
| 7/11/01 | | TAXES-LATE FEE | .11 | 139.05 |
| 7/12/01 | 8/11/01 | ALL MONTHLY SERVICES | 61.70 | 200.75 |
| 7/12/01 | 8/11/01 | FCC REGULATORY FEE | .04 | 200.79 |
| 7/12/01 | 8/11/01 | UTILITY TAX | 1.31 | 202.10 |
| 7/12/01 | 8/11/01 | FRANCHISE FEE | 3.31 | 205.41 |
| 7/12/01 | | STATEMENT BALANCE | 205.41 | 205.41 |
| 7/23/01 | | CHECK    BCH#-02876 | 68.50- | 136.91 |

02/28/2002 10:16 FAX 215 981 8508     COMCAST CABLE LEGAL DEPT                    ☒018
02/28/2002 06:36 FAX 215 981 8508     Document 26 CABLE   Filed 03/01/2007   Page 22 of 37 703



ICOMS

Acct Nbr  250121-02                                    Task

Ledger Details w/ Totals
File  Edit  Help

Account Number    250121-02  Name  MANUEL NIEVES

Last Statement Date     1/11/02  Amount        275.15  Statement        1

| From | To | Description | Amount | Total |
|---|---|---|---|---|
| 6/10/01 | | STATEMENT BALANCE | 136.94 | 13 .94 |
| 7/11/01 | | LATE FEE | 2.00 | 13 .94 |
| 7/11/01 | | TAXES-LATE FEE | .11 | 13 .05 |
| 7/12/01 | 6/11/01 | ALL MONTHLY SERVICES | 51.70 | 20 .75 |
| 7/12/01 | 6/11/01 | FCC REGULATORY FEE | .04 | 20 .79 |
| 7/12/01 | 6/11/01 | UTILITY TAX | 1.31 | 20 .10 |
| 7/12/01 | 6/11/01 | FRANCHISE FEE | 3.31 | 20 .41 |
| 7/12/01 | | STATEMENT BALANCE | 205.41 | 20 .41 |
| 7/23/01 | | CHECK          BCH#-02670 | 68.50- | 13 .91 |
| 8/10/01 | | LATE FEE | 2.00 | 13 .91 |
| 8/10/01 | | TAXES-LATE FEE | .11 | 13 .02 |
| 8/12/01 | 9/11/01 | ALL MONTHLY SERVICES | 51.70 | 20 .72 |
| 8/12/01 | 9/11/01 | FCC REGULATORY FEE | .04 | 20 .76 |

| 4/11/01 | 101.24 | CABLE BILL |

Select   Display All   Print   Display w/Totals

Start   Inbox - Microsoft Out...   ICOMSX Home Page -...   Customer Ledger -...            8:15 AM



Acct Nbr: 250121-02                          Task [            ]

**Ledger Details w/ Totals**
File  Edit  Help

Account Number   250121-02  Name  MANUEL NIEVES
Last Statement Date   1/11/02  Amount   275.16  Statement   1

| From | To | Description | Amount | Total |
|---|---|---|---|---|
| 8/12/01 | 9/11/01 | UTILITY TAX | 1.91 | 28?.87 |
| 8/12/01 | 9/11/01 | FRANCHISE FEE | 3.31 | 28?.38 |
| 8/11/01 | | STATEMENT BALANCE | 205.38 | 28?.38 |
| 8/27/01 | | CHECK          BCH#-06679 | 68.44- | 13?.94 |
| 9/11/01 | . | LATE FEE | 2.00 | 13?.94 |
| 9/11/01 | | TAXES-LATE FEE | .11 | 13?.05 |
| 9/12/01 | 10/11/01 | ALL MONTHLY SERVICES | 61.70 | 20?.75 |
| 9/12/01 | 10/11/01 | FCC REGULATORY FEE | .04 | 20?.79 |
| 9/12/01 | 10/11/01 | UTILITY TAX | 1.91 | 20?.10 |
| 9/12/01 | 10/11/01 | FRANCHISE FEE | 3.31 | 20?.41 |
| 9/11/01 | | STATEMENT BALANCE | 205.41 | 205.41 |
| 9/25/01 | | CASH           BCH#-07762 | 70.00- | 13?.41 |
| 10/11/01 | | LATE FEE | 2.00 | 13?.41 |

| 4/11/01 | | 101.24 | 1 | CABLE BILL |

[ Select ]  [ Display All ]  [ Print ]  [ Display w/Totals ]

02/28/2002 10:21 FAX 215 981 3508    COMCAST CABLE LEGAL DEPT                    ☑020
02/28/2002 08:28 FAX 302 861 3721  COMCAST CABLE

Case 1:05-cv-00322-GMS    Document 68    Filed 03/01/2007    Page 24 of 37



Acct Nbr: 250121-02                                  Task

**Ledger Details w/ Totals**
File   Edit   Help

Account Number    250121-02  Name  MANUEL NIEVES

Last Statement Date    1/11/02  Amount    275.15  Statement    1

| From | To | Description | Amount | Total |
|------|------|-------------|--------|-------|
| 10/11/01 | | TAXES-LATE FEE | .11 | 137 52 |
| 10/12/01 | 11/11/01 | ALL MONTHLY SERVICES | 61.70 | 199 22 |
| 10/12/01 | 11/11/01 | FCC REGULATORY FEE | .04 | 199 26 |
| 10/12/01 | 11/11/01 | UTILITY TAX | 1.31 | 200 57 |
| 10/12/01 | 11/11/01 | FRANCHISE FEE | 3.31 | 203 88 |
| 10/11/01 | | STATEMENT BALANCE | 203.88 | 203 88 |
| 10/25/01 | | TRANSACTION FEE | 1.99 | 205 87 |
| 10/25/01 | | FRANCHISE FEE | .11 | 205 98 |
| 10/26/01 | | VISA - MANUAL CCBCHA-00632 | 68.00- | 137 98 |
| 10/25/01 | 10/26/01 | BASIC | 3.47- | 134 51 |
| 10/25/01 | 10/26/01 | BASIC | .65- | 133 86 |
| 10/25/01 | 10/26/01 | FCC REGULATORY FEE | .00 | 133 86 |
| 10/25/01 | 10/26/01 | UTILITY TAX | .09- | 133 77 |

| 4/11/01 | 101.24 | 1 CABLE BILL |

Select    Display All    Print    Display w/ Totals

Start    Inbox - Microsoft Out...   ICOMSX Home Page -...   Customer Ledger -...                    8:15 AM



Acct Nbr  250121-02          Task

**Ledger Details w/ Totals**
File  Edit  Help

Account Number   250121-02  Name  MANUEL NIEVES
Last Statement Date   1/11/02  Amount   275.16  Statement   1

| From | To | Description | Amount | Total |
|---|---|---|---|---|
| 10/25/01 | 10/26/01 | FRANCHISE FEE | .22- | 13 .55 |
| 10/26/01 | | TRANSACTION FEE | 1.99 | 13 .54 |
| 10/26/01 | | FRANCHISE FEE | .11 | 13 .65 |
| 11/10/01 | | LATE FEE | 2.00 | 13 .65 |
| 11/10/01 | | TAXES-LATE FEE | .11 | 13 .76 |
| 11/12/01 | 12/11/01 | ALL MONTHLY SERVICES | 51.70 | 19 .46 |
| 11/12/01 | 12/11/01 | FCC REGULATORY FEE | .04 | 19 .50 |
| 11/12/01 | 12/11/01 | UTILITY TAX | 1.31 | 20 .81 |
| 11/12/01 | 12/11/01 | FRANCHISE FEE | 3.31 | 20 .12 |
| 11/11/01 | | STATEMENT BALANCE | 204.12 | 20 .12 |
| 11/26/01 | | VISA - MANUAL CCBCH#-09155 | 68.00- | 13 .12 |
| 12/10/01 | | LATE FEE | 2.00 | 13 .12 |
| 12/10/01 | | TAXES-LATE FEE | .11 | 13 .23 |

| 4/11/01 | 101.24 | 1 CABLE BILL |

Select   Display All   Print   Display w/Totals



Acct Nbr  250121-02                                    Task

**Ledger Details w/Totals**
File  Edit  Help

Account Number     250121-02  Name   MANUEL NIEVES
Last Statement Date     1/11/02  Amount     275.16  Statement     1

| From | To | Description | Amount | Total |
|------|------|------|------|------|
| 12/12/01 | 1/11/02 | ALL MONTHLY SERVICES | 61.78 | 199.93 |
| 12/12/01 | 1/11/02 | FCC REGULATORY FEE | .04 | 199.97 |
| 12/12/01 | 1/11/02 | UTILITY TAX | 1.31 | 201.28 |
| 12/12/01 | 1/11/02 | FRANCHISE FEE | 3.31 | 204.59 |
| 12/11/01 | | STATEMENT BALANCE | 204.59 | 204.59 |
| 12/26/01 | | TRANSACTION FEE | 1.99 | 206.58 |
| 12/26/01 | | FRANCHISE FEE | .11 | 206.69 |
| 1/10/02 | | LATE FEE | 2.00 | 208.69 |
| 1/10/02 | | TAXES-LATE FEE | .11 | 208.80 |
| 1/12/02 | 2/11/02 | ALL MONTHLY SERVICES | 61.78 | 270.58 |
| 1/12/02 | 2/11/02 | FCC REGULATORY FEE | .04 | 270.54 |
| 1/12/02 | 2/11/02 | UTILITY TAX | 1.31 | 271.85 |
| 1/12/02 | 2/11/02 | FRANCHISE FEE | 3.31 | 275.16 |

| 4/11/01 | 101.24 | 1 CABLE BILL |

Select     Display All     Print     Display w/Totals

Start     Inbox - Microsoft Out...     ICOMS Home Page -...     Customer Ledger -...     9:15 AM



Customer Ledger-All Bills w/Totals - Site 001                                    _ ☐ ×
File   Edit   Help

ICOMS

1 MANUEL NIEVES
Billing Process Nbr        59 Cycle    23 End Date    1/25/02

| From Date | To Date | Description | Trans Amount | Total |
|-----------|---------|-------------|--------------|-------|
| 1/24/02 | | Stat Beginning Balance | 275.16 | 275.16 |
| 12/26/01 | 2/11/02 | BASIC | 22.43- | 252.73 |
| 12/26/01 | 2/11/02 | STANDARD | 43.95- | 208.78 |
| 12/26/01 | 2/11/02 | FCC REGULATORY FEE | .06- | 208.72 |
| 12/26/01 | 2/11/02 | HOME BOX OFFICE | 14.10- | 194.62 |
| 12/26/01 | 2/11/02 | DIGITAL PLUS PACKAGE | 23.42- | 171.20 |
| 1/21/02 | | UNRETURNED EQUIPMENT | 300.00 | 471.20 |
| 1/24/02 | | Statement Balance | 471.20 | |
| 2/16/02 | | Statement Balance | 471.20 | |
| 2/20/02 | | SUSPENDED EQUIPMENT WRITE | 300.00- | 171.20 |
| 2/20/02 | | WRITE OFF DEBIT * | 171.20- | |
| | | Current Balance | .00 | |

Detail    Paren.    Display Split Payments       ▲ ▼

Start    [icons]    Inbox - Microsoft Out...    ICOMSX Home Page    Customer Ledger-A...    [icons]    8:18 AM

## IN THE SUPREME COURT OF THE STATE OF DELAWARE

MANUEL NIEVES,                    )
                                  ) No. 352, 2002
        Defendant Below,          )
        Appellant,                ) Court Below:  Superior Court
                                  ) of the State of Delaware in
v.                                ) and for New Castle County
                                  )
STATE OF DELAWARE,                ) ID No. 0107022700
                                  )
        Plaintiff Below,          )
        Appellee.                 )

Submitted: January 14, 2003
Decided: February 11, 2003

Before **HOLLAND, BERGER**, and **STEELE**, Justices.

### *O R D E R*

This 11th day of February 2003, it appears to the Court that:

1.      In March 2002, a Superior Court jury convicted appellant Manuel Nieves of numerous counts of rape and related crimes. In this appeal, Nieves asserts two grounds of error: (i) the trial judge failed to maintain impartiality before the jury thus denying him a fair trial and (ii) the trial judge's decision to reject the defendant's attempts to place before the jury his lack of a criminal record denied him a fair trial. We find no merit in either argument and conclude the conviction should be affirmed.

2.      The victim of alleged child molestation testified as a prosecution witness. She was eight years old at the time of trial. After she finished her

testimony, the trial judge excused her with the following words: "Jocelyn, you've done a great job. You can be excused now. Go outside and join your Mommy. Thank you very much." There was no objection to the trial judge's choice of words or a request for a curative instruction. Now, for the first time on appeal, Nieves claims the trial judge's choice of words amounted to commentary approving the substance of the victim's testimony, thus violating the Delaware Constitution's prohibition against judicial comment on the evidence. Since Nieves failed to object at trial, we review for plain error.[1] Plain error exists when the error was so clearly prejudicial to a defendant's substantial rights that it jeopardizes the very fairness and integrity of the trial process.[2]

3.    The Delaware Constitution prohibits trial judges from commenting upon evidence offered at trial.[3]    Article IV, section 19 specifically provides that "judges shall not charge juries with respect to matters of fact, but may state the questions of fact in issue and declare the law." "The purpose of the provision in the Delaware Constitution is to protect the province of the jury on factual issues."[4] Here, the trial judge's comment should be read as an attempt to calm an apprehensive witness rather than an overt expression evidencing bias. In any event, the trial judge's comment hardly rises to the level of jeopardizing the

---

[1] *Bullock v. State*, 775 A.2d 1043, 1046 (Del. 2001).
[2] *Id.*
[3] *Feleke v. State*, 620 A.2d 222, 228 (Del. 1993); *Wright v. State*, 405 A.2d 685, 689 (Del. 1979).
[4] Randy J. Holland, *The Delaware State Constitution: A Reference Guide* 150 (G. Alan Tarr, ed., 2002).

2

fairness and integrity of the trial process given the circumstances surrounding the statement and the text of the commonly given final instructions reminding the jury that they are the sole determiners of the facts.

4.      Nieves also claims that the trial judge's decision to reject the defendant's attempts to place before the jury his lack of a criminal record denied him the right to a fair trial. Twice during trial, defense counsel tried to place the fact that Nieves had no criminal record before the jury. Defense counsel asked the chief investigating officer during cross-examination whether the defendant had a criminal record. The prosecution objected on relevancy and the trial judge sustained the objection, finding the question "totally improper." The trial judge also instructed the jury to disregard defense counsel's question. Defense counsel also asked Nieves on direct examination whether he had ever been convicted of a serious crime. The prosecutor again objected on relevancy grounds and the trial judge sustained the objection. Nieves asserts that pursuant to D.R.E. 404(a)(1),[5] he was entitled to place his criminal record before the jury as character evidence.

---

[5] D.R.E. 404(a)(1) provides:

> (a) *Character evidence generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> (1) Character of the accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same.

3

5.    Nieves misreads Delaware Rule of Evidence 404(a). "Neither the defendant nor the prosecution may offer evidence of 'general' good or bad character. To be relevant, it is necessary that the evidence, good or bad, be confined to a particular trait or character the existence or nonexistence of which would be relevant to the crime charged or the credibility of a witness."[6]  The defendant's lack of a criminal record does not correlate with any character trait in issue. The trial judge appropriately recognized that the defense could have asked the questions with the sole purpose of suggesting that no criminal record would be inconsistent with the crimes for which the defendant faced trial. Even if the trial judge had determined the questions to be relevant, the trial judge has general discretionary authority to exclude the evidence if he determines that its probative value is substantially outweighed by practical considerations such as unfair prejudice, confusion of the issues, waste of time or danger of misleading the jury.[7] At a minimum here, allowing the jury to hear that the defendant had no criminal record would clearly run the risk of misleading the jury into the improper inference that the lack of a criminal record would be inconsistent with guilt beyond a reasonable doubt of the crimes for which he stood trial. Just as a criminal record can not be allowed to infer guilt, lack of a criminal record may not be allowed to

---

[6] 1 *Wharton's Criminal Evidence*, § 4:22, p. 359.

[7] For a general discussion of character evidence and its admissibility, *see* Graham C. Lilly, *An Introduction to the Law of Evidence* 130 (West Publishing, 3rd ed. 1996).

4

stand for inconsistence with guilt. Accordingly, the trial judge did not err by sustaining the State's objections.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED

BY THE COURT:

Mucclccice

Justice

oc:    Clerk of the Court
c:     Hon. Peggy L. Ableman
       Timothy J. Donovan, Jr.
       Bernard J. O'Donnell
       Court's Distribution List

5

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MANUEL NIEVES, | § | |
| | § | |
| Defendant Below- | § | No. 381, 2004 |
| Appellant, | § | |
| | § | Court Below---Superior Court |
| v. | § | of the State of Delaware, |
| | § | in and for New Castle County |
| STATE OF DELAWARE, | § | Cr. ID No. 0107022700 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: April 1, 2005
Decided: May 18, 2005

Before **STEELE**, Chief Justice, **JACOBS** and **RIDGELY**, Justices

## O R D E R

This 18th day of May 2005, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1)    The defendant-appellant, Manuel Nieves, filed an appeal from the Superior Court's August 16, 2004 order denying his motion for postconviction relief pursuant to Superior Court Criminal Rule 61.   We find no merit to the appeal.  Accordingly, we AFFIRM.

(2)    In March 2002, Nieves was found guilty by a Superior Court jury of twenty counts of Rape in the First Degree, ten counts of Unlawful Sexual Contact in the Second Degree, one count of Rape in the Second Degree, and one count of Continuing Sexual Abuse of a Child.  He was sentenced to a total of 322 years

incarceration at Level V. Nieves' convictions and sentences were affirmed by this Court on direct appeal.[1]

(3)    In this appeal, Nieves claims that: a) his trial attorney provided ineffective assistance by failing to secure an interpreter, properly prepare for trial, secure witness testimony, and investigate the motives of the victim; b) the trial judge improperly permitted a biased individual to sit on the jury; c) the trial judge's comment following the victim's testimony was unduly prejudicial; and d) the evidence presented at trial was insufficient to sustain his convictions.

(4)    In order to prevail on his claim of ineffective assistance of counsel, Nieves must show that his counsel's representation fell below an objective standard of reasonableness and that, but for his counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[2]    Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable."[3]

(5)    While Nieves claims that his counsel should have secured a Spanish interpreter, he offers no factual basis for that claim. There is no evidence in the record that Nieves was not able to communicate with his counsel in English.

---

[1] *Nieves v. State*, Del. Supr., No. 352, 2002, Steele, J. (Feb. 11, 2003).

[2] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[3] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

Moreover, he testified in his own defense at trial in English without any apparent difficulty. Nieves' claims that his trial counsel did not properly prepare for trial, secure the testimony of defense witnesses and investigate the motives of the victim are also without record support. Moreover, Nieves fails to demonstrate how the actions he claims should have been taken by his counsel would have altered the outcome of his case. Nieves' ineffective assistance of counsel claim is, thus, without merit.

(6)    Nieves' next claim is that the trial judge improperly permitted a biased individual to sit on the jury. Specifically, Nieves argues that one of the jurors had a niece who had been sexually assaulted. While it appears that during voir dire one of the prospective jurors revealed that his niece had been sexually assaulted, that individual ultimately was dismissed from the jury. Because Nieves presents no evidence of bias on the part of the jurors who served, this claim is, therefore, without merit.

(7)    Nieves next claims that he was deprived of a fair trial because of a remark the trial judge made following the testimony of the eight-year old victim. Specifically, the judge stated, " . . . you've done a great job. You can be excused now. Go outside and join your Mommy. Thank you very much." No objection was made at the time of the judge's remark. On direct appeal, this Court found

-3-

that the remark did not jeopardize Nieves' right to a fair trial given the circumstances surrounding the remark and the fact that the jury was instructed that they were the sole determiners of the facts. Because Nieves failed to raise this claim in his postconviction motion, we decline to address it in this appeal.[4] Even if Nieves had properly raised the claim in this appeal, it would be procedurally barred as formerly adjudicated.[5]

(8)    Nieves' final claim is that there was insufficient evidence presented to sustain his convictions. Because this claim was asserted, unsuccessfully, in the Superior Court trial, it is barred in this proceeding as formerly adjudicated.[6] The claim is without merit in any case. The testimony of the eight-year old victim provided sufficient evidence of Nieves' guilt, even though some of the specific details were contradicted by the testimony of another witness.[7]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

Justice

---

[4] Supr. Ct. R. 8.
[5] Super. Ct. Crim. R. 61(i) (4).
[6] Id.
[7] *Chao v. State*, 604 A.2d 1351, 1363 (Del. 1992).

-4-

CERTIFICATE OF SERVICE

I, _MANUEL NIEVES_ , hereby certify that I have

served a true and correct cop(ies) of the attached: _____

_____ Petitioner's Reply _____ upon the

following parties/person(s):


TO: _Clerks Office_          TO: _Elizabeth R McFarlan_

_U.S. District Court of Delaware_   _Department of Justice_

_A. Caleb Boggs Building, Lock Box 18_   _820 N. French Street_

_844 King Street_   _Wilmington, De 1980_

_Wilmington, De 1980_



TO: _____          TO: _____

_____          _____

_____          _____

_____          _____



BY PLACING SAME IN A SEALED ENVELOPE and depositing same in the
United States Mail at the Delaware Correctional Center, Smyrna, DE
19977,

On this _28_ day of _February_ , 200_7_.

                    * Manuel Nieves